IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Pennsylvania Independent Oil & Gas      :
Association, Pennsylvania Grade      :
Crude Oil Coalition, and Pennsylvania      :
Independent Petroleum Producers      :
Association,      :
     :
             Petitioners      :
     :
             v.      : No. 574 M.D. 2022
     : Submitted: December 6, 2023
Department of Environmental      :
Protection of the Commonwealth of      :
Pennsylvania and Environmental      :
Quality Board of the Commonwealth      :
of Pennsylvania,      :
     :
             Respondents      :


BEFORE:    HONORABLE RENÉE COHN JUBELIRER, President Judge
                 HONORABLE PATRICIA A. McCULLOUGH, Judge
                 HONORABLE ANNE E. COVEY, Judge
                 HONORABLE MICHAEL H. WOJCIK, Judge
                 HONORABLE ELLEN CEISLER, Judge
                 HONORABLE LORI A. DUMAS, Judge
                 HONORABLE STACY WALLACE, Judge


OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE WOJCIK                            FILED: April 16, 2024


        Before this Court, in our original jurisdiction, are the Preliminary

Objections (POs) of the Commonwealth of Pennsylvania, Department of

Environmental Protection (DEP), and Environmental Quality Board (EQB)

(collectively, the Agencies) to the Pennsylvania Independent Oil & Gas Association, Pennsylvania Grade Crude Oil Coalition, and Pennsylvania Independent Petroleum Producers Association's (collectively, Petitioners) Petition for Review in the Nature of a Complaint for Declaratory Relief (PFR) challenging the promulgation of the emergency-certified final-omitted "Control of VOC[1] Emissions from Conventional Oil and Natural Gas Sources" (Conventional VOC Regulation). For the reasons that follow, we overrule the Agencies' POs.

## I. Background

Petitioners, which are trade organizations representing conventional oil and natural gas producers, filed this action pursuant to the Declaratory Judgments Act (DJA), 42 Pa. C.S. §§7531-7541, seeking a determination of legal rights and obligations with regard to the Agencies' rulemaking and the adoption of the emergency-certified final-omitted Conventional VOC Regulation, which went into effect on December 2, 2022. The Agencies promulgated the Conventional VOC Regulation pursuant to their authority under the Air Pollution Control Act[2] to implement standards set forth in the federal Clean Air Act.[3] The Clean Air Act required States to establish "reasonably available control technology" (RACT) to control VOC emissions, which contribute to ozone formation, from the oil and natural gas industry emission sources by December 16, 2022, or face sanctions. To facilitate compliance, on October 16, 2016, the United States (U.S.) Environmental Protection Agency (EPA) issued the "Control Techniques Guidelines for the Oil and

---

[1] Volatile Organic Compounds.

[2] Act of January 8, 1960, P.L. (1959) 2119, *as amended*, 35 P.S. §§4001-4015.

[3] 42 U.S.C. §§7401-7671q.

2

Natural Gas Industry" (Federal Guidelines), which provided information to assist States in determining what constitutes RACT for VOC emissions. The Federal Guidelines make no distinction between unconventional and conventional oil and gas operations. PFR, ¶¶1-7, 9, 16-18.

Guided by the Federal Guidelines, the Agencies engaged in five rulemaking actions over the course of six years pursuant to the Regulatory Review Act[4] (RRA) and Commonwealth Documents Law[5] (CDL) to comply with the federal mandate. Rulemaking is the process by which agencies adopt regulations.[6]

---

[4] Act of June 25, 1982, P.L. 633, *as amended*, 71 P.S. §§745.1-745.14.

[5] Act of July 31, 1968, P.L. 769, *as amended*, 45 P.S. §§1102-1602; 45 Pa. C.S. §§501-907. *Former* Section 101 of the CDL, *formerly* 45 P.S. §1101, which constituted the short title, was repealed by the Act of July 9, 1976, P.L. 877. In the absence of a new title, we continue to refer to the act as the "Commonwealth Documents Law."

[6] Typically, the rulemaking process includes public notice of the agency's intention to promulgate an administrative regulation and the opportunity to comment. Section 201 of the CDL, 45 P.S. §1201. Such notice shall include the text of the proposed regulation, a statement of statutory authority, a brief explanation, and a request for written comments by any interested persons. *Id*. The agency shall hold a public comment period which shall commence with the publication of the proposed rulemaking in the Pennsylvania Bulletin for at least 30 days. 71 P.S. §745.5(b). The agency shall review and consider any written comments submitted pursuant to Section 201 and may hold public hearings as appropriate. Section 202 of the CDL, 45 P.S. §1202; *see* Section 5.1(a) of the RRA, 71 P.S. §745.5a(a).

In addition, Section 5(a) of the RRA requires the agency to submit the proposed regulation and regulatory analysis to the Independent Regulatory Review Commission (IRRC) and the Pennsylvania House of Representatives and Senate Committees that oversee the agency (legislative committees). 71 P.S. §745.5(a). A regulation that follows these notice and comment procedures is referred to as a "final-form regulation." Section 3 of the RRA, 71 P.S. §745.3.

"[P]rocedures exist to expedite the administrative rulemaking process." *Corman v. Acting Secretary of Pennsylvania Department of Health*, 267 A.3d 561, 574 n.5 (Pa. Cmwlth.), *aff'd*, 268 A.3d 1080 (Pa. 2021). Under limited circumstances, an agency may omit the public notice and comment procedures and proceed to "final-omitted" rulemaking if the agency for "good cause"
**(Footnote continued on next page…)**

The Agencies' first and second rulemaking proceedings proposed a regulation implementing RACT requirements to reduce VOC emissions for *both* unconventional and conventional oil and natural gas sources in a combined VOC rulemaking proceeding (combined rulemaking). PFR, Exhibit No. 2; *see* 50 Pa. B. 2633 (2020). After notice and comment, on March 15, 2022, the EQB submitted the final-form "Control of VOC Emissions from Oil and Natural Gas Sources"

---

finds that the notice and comment procedures are "impracticable, unnecessary, or contrary to the public interest." Section 204(3) of the CDL, 45 P.S. §1204(3); *see* Section 203 of the CDL, 45 P.S. §1203; 71 P.S. §745.5(b); *Pennsylvania Builders Association v. Department of Labor and Industry*, 284 A.3d 1287, 1293 n.12 (Pa. Cmwlth. 2022). A "final-omitted regulation" goes directly to the IRRC and legislative committees for review. 71 P.S. §745.3.

The process may be further expedited if the regulation is "emergency certified." *See* Section 6(d) of the RRA, 71 P.S. §745.6(d); *see* Section 5(l) of the RRA, 71 P.S. §745.5a(l). An emergency-certified regulation takes effect immediately upon the date of publication in the Pennsylvania Bulletin or on the date specified in the agency's adoption order while its review by the IRRC and legislative committees takes place over a 120-day period thereafter. 71 P.S. §745.6(d); *Corman v. Acting Secretary of Pennsylvania Department of Health*, 266 A.3d 452, 462 (Pa. 2021); *see* Section 903 of the CDL, 45 Pa. C.S. §903 (relating to effective date of documents); 1 Pa. Code §1374 (effectiveness prior to publication); 1 Pa. Code §313.2 ("An emergency[-]certified final regulation shall take effect immediately upon publication in the Pennsylvania Bulletin, or on the date specified in the agency's adoption order."). Such emergency measures apply

> if the Attorney General certifies that the final-form or final-omitted regulation is required pursuant to the decree of any court or to implement the provisions of a statute of the [U.S.] or regulations issued thereunder by a Federal agency or if the Governor certifies that the final-form or final-omitted regulation is required to meet an emergency which includes conditions which may threaten the public health, safety or welfare; cause a budget deficit; or create the need for supplemental or deficiency appropriations of greater than $1,000,000.

71 P.S. §745.6(d).

(Combined VOC Rule) to the Independent Regulatory Review Commission (IRRC)[7] and the legislative committees for consideration. PFR, ¶¶39-40.

The Pennsylvania House of Representatives Environmental Resources and Energy Committee (House ERE Committee) disapproved the final-form Combined VOC Rule. On April 26, 2022, the House ERE Committee sent a letter to the IRRC expressing its disapproval on the basis that the EQB was required to submit two rulemaking packages—one that applied to unconventional oil and natural gas sources and one that applied to conventional oil and natural gas sources -- based on its interpretation of the Pennsylvania Grade Crude Development Act (CDA).[8] The letter initiated the concurrent resolution process under Section 7(d) of the RRA, 71 P.S. §745.7(d), which allows the General Assembly to adopt a resolution that disapproves and permanently bars a final regulation from taking effect. In response,

---

[7] The IRRC reviews proposed, final-form, final-omitted, or existing regulations for consistency with the criteria contained in the RRA. Section 5.2 of the RRA, added by the Act of December 6, 2002, P.L. 1227, *as amended*, 71 P.S. §745.5b. Specifically, the IRRC reviews whether the "agency has the statutory authority to promulgate the regulation" and "whether the regulation conforms to the intention of the General Assembly in the enactment of the statute upon which the regulation is based." 71 P.S. §745.5b(a). The IRRC considers "written comments submitted by the committees and current members of the General Assembly, pertinent opinions of Pennsylvania's courts and formal opinions of the Attorney General." *Id*. In addition, the IRRC considers economic or fiscal impacts of the regulation; the protection of the public health, safety and welfare, and the effect on the Commonwealth's natural resources; the clarity, feasibility, and reasonableness of the regulation; whether the regulation represents a policy decision of such a substantial nature that it requires legislative review; comments, objections, or recommendations of a committee; compliance with the RRA; whether the regulation is supported by data; and whether a less costly or less intrusive alternative is available. 71 P.S. §745.5b(b)(1)-(8). The IRRC acts "as a clearinghouse for complaints, comments and other input from members of the General Assembly and from the public regarding existing, proposed, final-form and final-omitted regulations." Section 12 of the RRA, 71 P.S. §745.12.

[8] Act of June 23, 2026, P.L. 375, *as amended*, 58 P.S. §§1201-1208. Section 7(b) of the CDA, 58 P.S. §1207(b), provides that "[a]ny rulemaking concerning conventional oil and gas wells . . . shall be undertaken separately and independently of unconventional wells."

by letter dated May 4, 2022, the EQB notified the IRRC that it was withdrawing the final-form Combined VOC Rule from consideration.[9] PFR, ¶¶53-55; *see id.*, Exhibit No. 2.

Given the concerns expressed by the House ERE Committee and other commentators regarding the combined rulemaking, the Agencies engaged in a third rulemaking action limited to emissions from *unconventional* oil and natural gas wells (unconventional rulemaking). The DEP modified the withdrawn Combined VOC Rule by removing all applicable requirements related to the conventional oil and natural sources of VOC emissions. The DEP then resubmitted the final-form "Control of VOC Emissions from Unconventional Oil and Natural Gas Sources" (Unconventional VOC Regulation) to the EQB for consideration. Following the EQB's adoption, the final-form Unconventional VOC Regulation was submitted to, and approved by, the IRRC on July 21, 2022. Petitioners allege that at no point during the development of the Combined VOC Rule or Unconventional VOC Regulation did the Agencies solicit input from the Petitioners concerning the development of provisions applicable to VOC emission sources at conventional oil and natural gas wells and well sites. PFR, ¶¶56-62.

In both the fourth and fifth rulemaking proceedings, the Agencies proposed RACT requirements for VOC emissions for *conventional* oil and natural gas wells (conventional rulemaking). Regarding the fourth rulemaking, on October 12, 2022, the EQB adopted the final-omitted Conventional VOC Regulation, No. 7-579. The preamble to the final-omitted Conventional VOC Regulation stated that the DEP developed the Conventional VOC Regulation to address concerns

---

[9] A withdraw removes "a proposed, final-form or final-omitted regulation by an agency from the review process so that the [IRRC] and the [legislative] committees are prevented from taking further action on the regulation." Section 3 of the RRA, 71 P.S. §745.3.

expressed by the House ERE Committee and other commentators during the regulatory process for the combined rulemaking. The preamble further stated that "[p]ublic notice and solicitation of public comments are impracticable, unnecessary, and contrary to the public interest" because the "rulemaking was already subject to a notice and comment process" in the combined rulemaking and would delay implementation of the VOC RACT requirements. PFR, Exhibit No. 5 at 2; 52 Pa. B. 7635, 7636 (2022). The Regulatory Analysis Form (RAF) that accompanied the final-omitted Conventional VOC Regulation described DEP meetings with advisory committees for the Combined VOC Rule only. The Comment and Response Document similarly addressed comments solicited on the proposed Combined VOC Rule only. The RAF for the final-omitted Conventional VOC Regulation stated that the DEP did not have data on how many gathering and boosting stations and natural gas processing plants are used in the conventional industry and, thus, could not estimate the VOC and methane emissions reductions from these sources. PFR, ¶¶64-67 and Exhibit Nos. 2-4.

On November 14, 2022, the House ERE Committee disapproved the final-omitted Conventional VOC Regulation, which triggered a 14-day legislative review period. The 14-day period began after the IRRC approved the final-omitted Conventional VOC Regulation on November 17, 2022. During that 14-day period, the regulation could not be published in the Pennsylvania Bulletin. Because the 2022 legislative session ended on November 30, 2022, the regulation could not be published by the December 16, 2022 federal sanction deadline. *See* Section 5.1(j.3) of the RRA, 71 P.S. §745.5a(j.3). This prompted the Agencies to take emergency action. PFR, Exhibit No. 3.

7

The fifth and final rulemaking resulted in the emergency-certified final-omitted Conventional VOC Regulation, No. 7-580, which is at issue. On November 22, 2022, the DEP announced the EQB would consider adopting an emergency-certified final-omitted Conventional VOC Regulation at a meeting scheduled for November 30, 2022. The emergency-certification was based upon the Governor's certification that an immediate amendment to the regulations was necessary to prevent sanctions, namely, the loss of approximately $800,000,000.00 in federal highway funding. The emergency-certified final-omitted Conventional VOC Regulation, No. 7-580, is identical to final-omitted Conventional VOC Regulation, No. 7-579, except for the emergency certification. The preamble and documents offered in support mirrored those presented with the final-omitted Conventional VOC Regulation, No. 7-579. On November 30, 2022, EQB adopted the emergency-certified final-omitted Conventional VOC Regulation, without notice or comment pursuant to Section 204(3) of the CDL, 45 P.S. §1204(3). *See* 25 Pa. Code §§129.131-129.140. The emergency-certified final-omitted Conventional VOC Regulation went into effect on December 2, 2022, just short of the federal deadline, and was published in the Pennsylvania Bulletin on December 10, 2022. PFR, ¶¶78-84 and Exhibit Nos. 1-4; 25 Pa. Code §129.131; *see also* 45 Pa. C.S. §903 (relating to effective date of documents), 1 Pa. Code §13.74 (permitting effective date prior to publication if deferral is "impractical or contrary to the public interest").

Petitioners allege that the Agencies failed to comply with express statutory provisions regarding the promulgation of the Conventional VOC Regulation without good cause. Petitioners' PFR sets forth two counts. In Count I, Petitioners contend that the Agencies violated the CDL by failing to provide notice

8

and public comment opportunity on the Conventional VOC Regulation. Petitioners assert that the Agencies lacked good cause under the circumstances to meet the statutory exception to the notice and comment requirements before finalizing the emergency-certified final-omitted Conventional VOC Regulation because the Agencies had six years to comply with federal mandates.

In Count II, Petitioners claim that the Agencies failed to comply with Section 7(b) of the CDA, 58 P.S. §1207(b), which requires the EQB to undertake any rulemaking concerning conventional oil and gas wells "separately and independently of unconventional wells . . . ." Petitioners allege that the Conventional VOC Regulation resulted from *combined* rulemaking concerning conventional *and* unconventional oil and gas wells. They allege that the Agencies did not undertake conventional rulemaking "separately and independently of unconventional wells" or develop a RAF restricted to the subject of conventional oil and gas wells. Petitioners claim that these compliance failures render the emergency-certified final-omitted Conventional VOC Regulation null and void.

Petitioners ask this Court to find and declare:

1. [T]he plain meaning of the phrase "any rulemaking concerning conventional oil and gas wells" in Section 7(b) of [the CDA, 58 P.S. §1207(b),] applies to a rulemaking concerning only the Pennsylvania oil and natural gas industry that imposes requirements and obligations on owners and operators of conventional oil and gas wells and well sites;

2. [The] [A]gencies failed to comply with the mandates of Section 7(b) of [the CDA] when undertaking the [c]ombined [] [r]ulemaking as well as the emergency-certified final-omitted Conventional VOC Regulation derived from the Combined VOC Rule[];

9

3. [T]he emergency[-]certified final-omitted Conventional VOC Regulation was not promulgated in compliance with Section 7(b) of [the CDA];

4. [T]he emergency[-]certified final-omitted Conventional VOC Regulation is therefore null and void; and

5. DEP may not implement or enforce a final regulation concerning VOC emission sources at conventional oil and gas wells and well sites without complying with Section 7(b) of [the CDA,]

and provide any other relief the Court deems appropriate.

PFR, at 36.

## II. POs

In response, the Agencies filed POs pursuant to Pa.R.Civ.P. 1028(a)(4) (demurrer); 1028(a)(5) (lack of capacity to sue); and 1028(a)(7) (failure to exhaust a statutory remedy). More particularly, the Agencies demur to Count I, claiming the emergency-certified final-omitted Conventional VOC Regulation is a valid exercise of their rulemaking authority, and Petitioners fail to offer any legal support for their allegation that the regulation was not validly promulgated. The Agencies also demur to Count II on the basis that the CDA does not apply to regulations promulgated under the Air Pollution Control Act and, if it did, they fully complied with its mandates. The Agencies next object on the ground that Petitioners have not exhausted administrative remedies available to them before seeking relief from this Court. Finally, the Agencies object on the basis that Petitioners are not aggrieved and, therefore, lack standing to challenge the previous Combined VOC Rule because

10

this rule was withdrawn in favor of the emergency-certified Conventional VOC Regulation.  Petitioners answered the POs.  We address each of the POs in turn.[10]

### III. Discussion
### A. Demurrer – Count I
### 1. Contentions
### a. Agencies' Position

First, the Agencies contend that Petitioners fail to state a viable legal claim in Count I.  The emergency-certified final-omitted Conventional VOC Regulation at issue in this case is a valid exercise of the Agencies' rulemaking authority.  The Agencies assert they had good cause to omit the notice and comment procedures specified in Sections 201 and 202 of the CDL, 45 P.S. §§1201, 1202.  Specifically, the Agencies justify the omission based on the federally-imposed compliance deadline of December 16, 2022, to regulate VOC emissions and threat of sanctions.  Had the Agencies failed to meet this deadline, the Commonwealth stood to lose millions of dollars in federal highway funding as a sanction.  Petitioners fail to offer any legal support for their allegation that this regulation was not a validly promulgated rule under Pennsylvania law.

---

[10] In ruling on POs, this Court

> must accept as true all well-pled facts that are material and all inferences reasonably deducible from the facts.  However, [we] are not required to accept as true any unwarranted factual inferences, conclusions of law or expressions of opinion.  For [POs] to be sustained, it must appear with certainty that the law will permit no recovery.  Any doubt must be resolved in favor of the non-moving party.

*Guarrasi v. Scott*, 25 A.3d 394, 400 n.5 (Pa. Cmwlth. 2011); *accord Pennsylvania Independent Oil & Gas Association v. Department of Environmental Protection*, 135 A.3d 1118, 1123 (Pa. Cmwlth. 2015), *aff'd*, 161 A.3d 949 (Pa. 2017).

11

## b. Petitioners' Position

Petitioners counter that the Agencies used an improper procedure for promulgating regulations under Section 204(3) of the CDL, 45 P.S. §1204(3), to circumvent proper notice and comment procedures. According to Petitioners, the Agencies lacked good cause because they had sufficient time – over six years – to comply with the federal mandate. The Agencies have not stated any exigent circumstances other than those of their own making through delay. Proceeding in this manner was held to be improper by this Court in *Automotive Services Councils of Pennsylvania v. Larson*, 474 A.2d 404 (Pa. Cmwlth. 1984).

## 2. Analysis

When adjudicating the validity of a regulation, the Court considers whether the regulations are "(a) adopted within the agency's granted power, (b) issued pursuant to proper procedure, and (c) reasonable." *Bucks County Services, Inc. v. Philadelphia Parking Authority*, 195 A.3d 218, 227 (Pa. 2018) (citations omitted). As for proper procedure, a regulation must be promulgated pursuant to the notice and comment procedures contained in the CDL in order to have the force and effect of law. *R.M. v. Pennsylvania Housing Finance Agency of Commonwealth*, 740 A.2d 302, 306 (Pa. Cmwlth. 1999). Section 201 of the CDL provides:

> Except as provided in [S]ection 204[ of the CDL, 45 P.S. §1204,] an agency shall give, in the manner provided in [S]ection 405 [of the CDL, 45 P.S. §1405,] (relating to additional contents of temporary supplements) public notice of its intention to promulgate, amend or repeal any administrative regulation. Such notice shall include:
>
> (1) The text of the proposed administrative regulation, except any portions thereof omitted pursuant to [S]ection 407[ of the CDL, 45 P.S. §1407,] (relating to matter not

12

required to be published), prepared in such a manner as to indicate the words to be added or deleted from the presently effective text thereof, if any.

(2) A statement of the statutory or other authority under which the administrative regulation or change therein is proposed to be promulgated.

(3) A brief explanation of the proposed administrative regulation or change therein.

(4) A request for written comments by any interested person concerning the proposed administrative regulation or change therein.

(5) Any other statement required by law.

45 P.S. §1201.

However, an agency may bypass these procedures under limited circumstances for "good cause." Section 204(3) of the CDL, 45 P.S. §1204(3); *see Larson*, 474 A.2d at 405. Specifically, Section 204(3) of the CDL provides:

The agency for *good cause* finds (and incorporates the finding and a brief statement of the reasons therefor in the order adopting the administrative regulation or change therein) that the procedures specified in sections 201 and 202[ of the CDL, 45 P.S. §§1201, 1202,] *are in the circumstances impracticable, unnecessary, or contrary to the public interest*.

45 P.S. §1204(3) (emphasis added). The reasons for departing from the requirements must be stated and persuasive. *See Larson*, 474 A.2d at 405-06. "[R]egulations not properly promulgated" under the CDL's standard or emergency procedures "are a nullity." *Id*. at 405.

In *Larson*, the Pennsylvania Department of Transportation (DOT) promulgated a regulation without a comment period asserting good cause under Section 204(3) of the CDL. *Larson*, 474 A.2d at 405. DOT justified its omission

13

based on its need to comply with a court-imposed time constraint of August 1, 1983. *Id.* We determined that DOT did not advance good cause, explaining:

> The regulations were in final form and submitted . . . by June 2, 1983. DOT could have published the regulations for comment at this time, *yet it waited until July 23, 1983. Since there was sufficient time and opportunity to submit the regulations for the prescribed thirty-day comment period, DOT cannot claim that the period was unnecessary due to time limitations set by the federal court.*

*Id.* at 406 (emphasis added). This Court opined that the purpose of the CDL's notice and comment procedures is "to provide parties with a fair opportunity to present their position whether or not they will ultimately prevail." *Id.* Allowing an agency to bypass the CDL's procedures "would significantly limit the public's input as to future proposed regulations." *Id.* Because the regulation was not properly promulgated, we declared it a nullity. *Id.*

Later, in *Jeffers v. Commonwealth*, 601 A.2d 401, 404 (Pa. Cmwlth. 1991), we affirmed the validity of a regulation promulgated by DOT under "emergency circumstances." *Jeffers* was distinguishable from *Larson* in three key respects. *See id.* at 403. First, unlike the procedure in *Larson* in which DOT provided no opportunity for comment, in *Jeffers*, DOT gave the public 30 days in which to comment upon the regulation. *Id.* Second, there was no evidence that DOT "could have complied with the notice period." *Id.* "[T]here was an emergency situation which required immediate action." *Id.* Specifically, the immediate adoption of the regulation was necessary to facilitate the prosecution of drunk driving cases. *Id.* Finally, the regulation was published in the Pennsylvania Bulletin, which created a rebuttable presumption of validity under Section 905 of the CDL,

14

45 Pa. C.S. §905, which was not rebutted. *Jeffers*, 601 A.2d at 404. Given these distinctions, we held that the regulation was properly promulgated. *Id*.

Thereafter, in *Department of Transportation v. Colonial Nissan, Inc.*, 691 A.2d 1005, 1009 (Pa. Cmwlth. 1997), we again considered the validity of certain DOT regulatory amendments promulgated under Section 204 of the CDL. DOT defended that it was not necessary to adhere to the procedures specified in Sections 201 and 202 of the CDL because it was "merely readopting" a prior regulation without enlarging the scope of the existing regulation. *Id*. However, when the regulation was published in the Pennsylvania Code, there were modifications from the version previously published, which DOT subsequently corrected in an amendment. *Id*. Ultimately, this Court invalidated the amendments promulgated under Section 204 because the modifications and amendments to the prior regulation necessitated "adherence to the normal notice and comment procedures." *Id*. We explained:

> [T]he reasons which DOT cited in its January 6, 1990 announcement to justify proceeding under Section 204 of the [CDL] were defeated by the errors inadvertently contained in the January 1, 1994 publication and the subsequent corrective amendments of October 1994 make it obvious that adherence to the normal notice and comment procedures was far from "unnecessary."

*Id*. We emphasized that "[t]he process by which regulations are promulgated provides an important safeguard against the unwise or improper exercise of discretionary administrative power *and includes public notice of a proposed rule, request for written comments, consideration of such comments*, and hearings as appropriate." *Id*. (emphasis added).

Here, as in *Jeffers* and *Colonial Nissan*, the emergency-certified final-omitted Conventional VOC Regulation was published in the Pennsylvania Bulletin,

15

thereby creating a rebuttable presumption of validity. *See* 45 Pa. C.S. §905. To rebut this presumption, Petitioners alleged that the Agencies did not provide an opportunity for public comment on the emergency-certified final-omitted Conventional VOC Regulation, which the Agencies do not deny. Petitioners challenge the Agencies' purported "good cause" justification on the basis that there was ample time to comply with notice and comment procedures had the Agencies acted sooner.

The Agencies maintain that their actions were justified based on the federal deadline of December 16, 2022, and the threat of significant sanctions. However, under *Larson*, the Agencies' stated reason is questionable considering they had *over six years* to promulgate the regulation. Although the Agencies engaged in combined rulemaking during this six-year period, the Agencies did not engage in separate rulemaking until approximately six months before the deadline. The Agencies' third rulemaking action, which began in May 2022, complied with the CDL's notice and comment requirements. This separate rulemaking was limited to the regulation of VOC emissions from unconventional oil and gas wells and led to the adoption of the final Unconventional VOC Regulation. However, the Agencies did not similarly engage in separate rulemaking related to conventional oil and gas wells at this time. Instead, the Agencies waited until October 2022, to begin the rulemaking process for conventional oil and gas wells. Given the close proximity to the compliance deadline, the Agencies bypassed notice and comment procedures citing exigent circumstances. As in *Larson*, it appears that there was ample time and opportunity to follow standard CDL procedures had they engaged in the rulemaking process for conventional oil and gas wells at an earlier date. Under these

16

circumstances, it does not appear with certainty that the law will permit no recovery. We, therefore, overrule the Agencies' PO to Count I.

## B. Demurrer – Count II
### 1. Contentions
#### a. Agencies' Position

Next, the Agencies contend that Petitioners failed to state a viable legal claim in Count II. The emergency-certified final-omitted Conventional VOC Regulation was promulgated to reduce air pollution under the Air Pollution Control Act and, according to the Agencies, is not subject to the requirements of the CDA. Petitioners' assertion that the Regulation is subject to the requirements of CDA is inconsistent with the rules of statutory construction. Although Section 7(b) of the CDA states that "any rulemaking concerning conventional oil and gas wells . . . shall be undertaken separately and independently of unconventional wells . . .", 58 P.S. §1207(b), the meaning of "any" is wholly dependent on the statutory context in which it is used. Therefore, it is inapplicable to regulations adopted under the Air Pollution Control Act. Even assuming that the CDA requirements are applicable here, the Agencies' rulemaking process followed those very procedures. Finally, the Petitioners are prohibited from asserting a cause of action under the RRA.

#### b. Petitioners' Position

Petitioners respond that Section 7(b) of the CDA clearly and unequivocally states that "[*a*]*ny rulemaking* concerning conventional oil and gas wells that the [EQB] undertakes . . . shall be undertaken *separately and independently of unconventional wells . . . .*" 58 P.S. §1207(b) (emphasis added). This plain statutory provision applies to the rulemaking in the pending action that directly concerns conventional oil and gas wells. The General Assembly did not add

17

any restrictive language that "any rulemaking" pertained only to proposed regulations under the CDA. Despite engaging in combined rulemaking for approximately six years, the Agencies failed to promulgate a regulation that complied with the mandates in Section 7(b) of the CDA. Contrary to the Agencies' assertions, Petitioners have not asserted a cause of action under the RRA. Rather, their claims arise under the CDL (Count I) and the CDA (Count II).

## 2. Analysis

Section 7(b) of the CDA provides:

> *Any rulemaking concerning conventional oil and gas wells* that the [EQB] undertakes after the effective date of this act shall be *undertaken separately and independently of unconventional wells* or other subjects and shall include a [RAF] submitted to the [IRRC] that is restricted to the subject of conventional oil and gas wells.

58 P.S. §1207(b) (emphasis added).

In ascertaining the meaning of a statute, we are guided by the Statutory Construction Act of 1972 (SCA). The overriding object of all statutory interpretation and construction "is to ascertain and effectuate the intention of the General Assembly" in enacting the statute under review. Section 1921(a) of the SCA, 1 Pa. C.S. §1921(a). In addition, we must construe rules which pertain to the same subject together. Section 1932 of the SCA, 1 Pa. C.S. §1932.

If statutory language is "clear and free from ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." Section 1921(b) of the SCA, 1 Pa. C.S. §1921(b). Thus, "when the words of a statute have a plain and unambiguous meaning, it is this meaning which is the paramount indicator of legislative intent." *Snyder Brothers, Inc. v. Pennsylvania Public Utility*

18

*Commission*, 198 A.3d 1056, 1071 (Pa. 2018), *order amended on reconsideration*, 203 A.3d 964 (Pa. 2019). "However, in situations where the words of a statute 'are not explicit,' the legislature's intent may be determined by considering any of the factors enumerated in Section 1921(c) [of the SCA, 1 Pa. C.S. §1921(c).]" *Id.* These factors are:

> (1) The occasion and necessity for the statute.
>
> (2) The circumstances under which it was enacted.
>
> (3) The mischief to be remedied.
>
> (4) The object to be attained.
>
> (5) The former law, if any, including other statutes upon the same or similar subjects.
>
> (6) The consequences of a particular interpretation.
>
> (7) The contemporaneous legislative history.
>
> (8) Legislative and administrative interpretations of such statute.

1 Pa. C.S. §1921(c). This Court has further declared:

> [W]hen a statute is ambiguous, courts generally defer to the expertise of the agency upon which the General Assembly has vested enforcement or interpretive responsibilities and, consequently, should accept the agency's interpretation of ambiguous statutory language. When an agency's interpretation is entitled to such deference, courts will defer to such proposed interpretation unless an agency's interpretation of a statute is erroneous or frustrates legislative intent.

*Stodghill v. Pennsylvania Department of Corrections*, 150 A.3d 547, 554 (Pa. Cmwlth. 2016) (internal citations and quotations omitted); *see Corman v. Acting Secretary of Pennsylvania Department of Health*, 266 A.3d 452, 485 (Pa. 2021).

19

The word "any" can take one of "two commonly accepted alternative meanings in the English language" depending "on how it is used in a particular statute." *Snyder Brothers*, 198 A.3d at 1072. It can "mean 'all' or 'every,' as well as 'one.'" *Id.* (quoting Black's Law Dictionary 94 (6th ed. 1991)). "[T]he meaning of the term 'any'" is "wholly dependent on the context in which it is used in the particular statute under review." *Id.* at 1073.

Section 7(b) has not yet been interpreted by this, or any, Court. Petitioners have advanced a viable interpretation that "[a]ny rulemaking concerning conventional oil and gas wells that the [EQB] undertakes" must be "undertaken separately and independently of unconventional wells" in *any* statutory context. 58 P.S. §1207(b). The House ERE Committee expressed this same interpretation when disapproving the Combined VOC Rule. *See* PFR, ¶¶53-54 and Exhibit No. 2, at 7. The Agencies counter that "any rulemaking" pertains only to regulations promulgated under the CDA and is wholly inapplicable to regulations promulgated under the Air Pollution Control Act. Although the Agencies' interpretation is entitled to deference, they have not demonstrated that their interpretation of Section 7(b) is so clear and free from doubt that Count II of Petitioners' PFR should be dismissed on POs. Because this issue is one of first impression and is not clear and free from doubt, we overrule the Agencies' PO to Count II. *See Pennsylvania AFL-CIO ex rel. George v. Commonwealth*, 757 A.2d 917, 921 (Pa. 2000); *Stodghill*, 150 A.3d at 554.

Assuming that the CDA applies to regulations promulgated under the Air Pollution Control Act, the Agencies alternatively assert that Count II should be dismissed because the Agencies satisfied those requirements in the combined rulemaking that led to the adoption of the Conventional VOC Regulation. However,

before this Court can address compliance, the legal question must first be resolved as to whether the CDA is applicable to the regulation here. At this stage, we also must accept as true Petitioners' factual allegations that the Agencies engaged in combined rulemaking concerning conventional oil and gas wells for approximately six years without doing so separately and independently of unconventional oil and gas wells. PFR, ¶¶21-22, 39-40, 64-74; *see* POs, ¶¶10-16, 57, 66, 112. Therefore, the Agencies are not entitled to a demurrer on this alternate basis.

Finally, regarding the Agencies' RRA objection, Petitioners' claims arise under the CDL (Count I) and the CDA (Count II), not under the RRA. For these reasons, we overrule the Agencies' demurrer to Count II.

### C. Failure to Exhaust Administrative Remedy
### 1. Contentions
### a. Agencies' Position

Next, the Agencies contend that Petitioners have not exhausted their administrative remedies under the RRA's review and comment process. Although the emergency-certified final-omitted Conventional VOC Rule is fully effective and enforceable, it is still subject to review by the IRRC and legislative committees in the same manner as all other final-form and final-omitted regulations. The only difference is that the emergency-certified final-omitted Conventional VOC Regulation became effective immediately in advance of the review. It is through this review process that Petitioners can submit comments and request the IRRC to disapprove the Conventional VOC Regulation. There are several steps left in the regulatory review process that must be completed under the RRA. Petitioners have not asserted any grounds for bypassing this process.

21

**b. Petitioners' Position**

Petitioners respond that the Agencies' exhaustion of administrative remedies argument fails because the comment remedy under the RRA is wholly inadequate. Petitioners and other conventional producers have been subject to the requirements of the challenged regulation since December 2, 2022, and they are harmed by them. Petitioners will continue to incur compliance costs during the comment process while they wait to see if the emergency-certified final-omitted Conventional VOC Regulation will be permanently effective or disapproved. The industry-wide cost of regulatory compliance is approximately $9,800,000.00 per year. PFR, ¶81.

**2. Analysis**

Under the doctrine of exhaustion of administrative remedies, a party must exhaust all available administrative remedies before the right of judicial review arises. *Empire Sanitary Landfill, Inc. v. Department of Environmental Resources*, 684 A.2d 1047, 1054 (Pa. 1996); *Keystone ReLeaf, LLC v. Pennsylvania Department of Health*, 186 A.3d 505, 514 (Pa. Cmwlth. 2018). "However, the exhaustion doctrine is neither inflexible nor absolute." *Keystone ReLeaf*, 186 A.3d at 514. (citing *Feingold v. Bell of Pennsylvania*, 383 A.2d 791, 793 (Pa. 1977)). There are narrow circumstances where exhaustion of remedies is not required. *Id*. Our Supreme Court has recognized three exceptions to the exhaustion of administrative remedies:

> The first exception is where the jurisdiction of an agency is challenged. The second exception is where the constitutionality of a statutory scheme or its validity is challenged. *The third exception is where the legal or equitable remedies are unavailable or inadequate, or the*

22

> *administrative agency is unable to provide the requested relief.*

*Empire Sanitary*, 684 A.2d at 1054 (internal citations omitted) (emphasis added). "Where the effect of the challenged regulations upon the industry regulated is direct and immediate, the hardship thus presented suffices to establish the justiciability of the challenge in advance of enforcement." *Arsenal Coal Co. v. Department of Environmental Resources*, 477 A.2d 1333, 1339 (Pa. 1984).

Section 6 of the RRA, 71 P.S. §745.6, sets forth procedures for disapproval of final-form and final-omitted regulations and emergency-certified regulations. Specifically, Section 6(d) provides:

> *The* [*IRRC*] *may not issue an order barring an agency from promulgating a final-form or final-omitted regulation* if the Attorney General certifies that the final-form or final-omitted regulation is required pursuant to the decree of any court or to implement the provisions of a statute of the [U.S.] or regulations issued thereunder by a Federal agency *or if the Governor certifies that the final-form or final-omitted regulation is required to meet an emergency which includes conditions which may threaten the public health, safety or welfare; cause a budget deficit; or create the need for supplemental or deficiency appropriations of greater than $1,000,000.* In those cases, the final-form or final-omitted regulation may take effect on the date of publication or on a later date specified in the order adopting the final-form or final-omitted regulation. The [IRRC] and the [legislative] committees shall review the final-form or final-omitted regulation pursuant to the procedures provided for in this act. If the final-form or final-omitted regulation is disapproved pursuant to those procedures, that regulation shall be rescinded after 120 days or upon final disapproval, whichever occurs later.

71 P.S. §745.6(d) (emphasis added); *see Corman*, 266 A.3d at 462; *Corman v. Acting Secretary of Pennsylvania Department of Health*, 267 A.3d 561, 574 n.20 (Pa. Cmwlth.), *aff'd*, 268 A.3d 1080 (Pa. 2021).

23

Section 7 of RRA, 71 P.S. §745.7, governs the procedures for subsequent review of disapproved final-form or final-omitted regulations. Section 7 provides:

(a) An agency may select one of the following options for proceeding with a regulation which has been disapproved by the [IRRC]:

(1) To proceed further with the final-form or final-omitted regulation pursuant to subsection (b).

(2) To proceed further with the final-form or final-omitted regulation pursuant to subsection (c).

(3) To withdraw the final-form or final-omitted regulation.

(b) If the agency decides to adopt the final-form or final-omitted regulation without revisions or further modifications, the agency shall submit a report to the committees and the [IRRC] within 40 days of the agency's receipt of the [IRRC]'s disapproval order. The agency's report shall contain the final-form or final-omitted regulation, the [IRRC]'s disapproval order and the agency's response and recommendations regarding the final-form or final-omitted regulation. If the committees are prevented from receiving the report because of adjournment sine die or expiration of the legislative session in an even-numbered year, the agency shall submit its report to the [IRRC] and the committees on the fourth Monday in January of the next year. If either committee has not been designated by the fourth Monday in January, the agency may not deliver the report to the committees and the [IRRC] until both committees are designated, but the agency shall deliver its report to the [IRRC] and the committees no later than the second Monday after the date by which both committee designations have been published in the Pennsylvania Bulletin. If the agency does not deliver the report to the committees and the [IRRC] in the time prescribed in this subsection, the agency shall be

24

deemed to have withdrawn the final-form or final-omitted regulation.

(c) If the agency decides to revise or modify the final-form or final-omitted regulation in order to respond to objections raised by the [IRRC] and adopt that regulation with revisions or modifications, the agency shall submit a report to the committees and the [IRRC] within 40 days of the agency's receipt of the [IRRC]'s disapproval order. The agency's report shall contain the revised final-form or final-omitted regulation, the findings of the [IRRC], and the agency's response and recommendations regarding the revised final-form or final-omitted regulation. If the committees are prevented from receiving the report because of adjournment sine die or expiration of the legislative session in an even-numbered year, the agency shall submit the report to the [IRRC] and the committees on the fourth Monday in January of the next year. If either committee has not been designated by the fourth Monday in January, the agency may not deliver the report to the committees and the [IRRC] until both committees are designated, but the agency shall deliver its report to the [IRRC] and the committees no later than the second Monday after the date by which both committee designations have been published in the Pennsylvania Bulletin. If the agency does not deliver its report to the [IRRC] and the committees in the time prescribed in this subsection, the agency shall be deemed to have withdrawn the final-form or final-omitted regulation.

71 P.S. §745.7.

Here, the emergency-certified final-omitted Conventional VOC Regulation became effective and fully enforceable as of December 2, 2022. Although the regulation is subject to the RRA's regulatory review process, there was no remedy available to Petitioners while they submitted comments and waited to see if the emergency-certified final-omitted Conventional VOC Regulation would

25

become permanently effective or disapproved of under 71 P.S §745.6(d).[11] Even if disapproved, the Agencies are authorized to proceed under Section 7(b) or (c) of the RRA, 71 P.S. §745.7(b) or (c). Because the regulation was effective and fully enforceable as of December 2, 2022, the conventional oil and gas well industry immediately faced substantial compliance costs and potential sanctions for noncompliance. Thus, the effects of the emergency-certified final-omitted Conventional VOC Regulation were "direct and immediate" on the conventional oil and gas well industry as of December 2, 2022. *See Arsenal*, 477 A.2d at 1339. Although the IRRC has the power to consider comments in the review process, it does not have "the power to grant declaratory judgment and injunctive relief pursuant to the [DJA], . . . because only courts of record of the Commonwealth have that jurisdiction." *Empire Sanitary*, 684 A.2d at 1055. Upon review, we conclude that the administrative remedy is not adequate. Thus, we overrule this PO.

### D. Lack of Capacity to Sue
### 1. Contentions
### a. Agencies' Position

Finally, the Agencies object on the basis that Petitioners lack the capacity to challenge the combined rulemaking process or Combined VOC Rule under Pa.R.Civ.P. 1028(a)(5). The Combined VOC Rule was withdrawn in favor of the Conventional VOC Regulation. Because the Combined VOC Rule no longer exists, it became a nullity. It, therefore, follows that Petitioners cannot be aggrieved by a regulation that does not exist. Consequently, Petitioners have no standing to challenge whether the combined rulemaking process complied with the CDA.

---

[11] We note that on April 20, 2023, the emergency-certified final-omitted VOC Regulation received final approval from the IRRC.

26

## b. Petitioners' Position

Petitioners contend that they have standing to seek declaratory relief regarding the combined rulemaking process because it was this very process that led to the adoption of the emergency-certified final-omitted Conventional VOC Regulation. The Agencies failed to comply with the mandates of Section 7(b) of the CDA by not developing regulations for conventional oil and gas wells separately and independently of unconventional oil and gas wells. The Agencies did not permit notice and comment on a proposed rulemaking package developed specifically for conventional wells separate and apart from unconventional gas wells. The Agencies ask this Court to overlook six years of combined rulemaking undertaken in clear violation of Section 7(b) of the CDA before proceeding to emergency-certified final-omitted rulemaking procedures.

## 2. Analysis

In ruling on POs alleging a lack of capacity to sue, we must consider the party's standing. *PG Publishing Co., Inc. v. Governor's Office of Administration*, 120 A.3d 456, 461 (Pa. Cmwlth. 2015), *aff'd*, 135 A.3d 578 (Pa. 2016). Our Supreme Court has explained that the hallmark of standing is that a party that "is not adversely affected in any way by the matter [it] seeks to challenge is not 'aggrieved' thereby." *William Penn Parking Garage, Inc. v. City of Pittsburgh*, 346 A.2d 269, 280 (Pa. 1975). A party is aggrieved if it has a "substantial, direct and immediate interest in the outcome of the litigation." *Fumo v. City of Philadelphia*, 972 A.2d 487, 496 (Pa. 2009).

Here, Petitioners seek declaratory relief with respect to the emergency-certified final-omitted Conventional VOC Regulation as well as the combined

rulemaking process upon which the regulation was based because the process failed to satisfy the statutory obligations of the CDA. Petitioners have pleaded that they are aggrieved by the Agencies' failure to comply with the requirements of Section 7(b) of CDA in the undertaking, development, and/or formulation of the Combined VOC Rule because those rulemaking efforts were not "undertaken separately and independently of unconventional wells." Beginning in 2017, and over the next six years, the Agencies engaged in *combined* rulemaking for both conventional and unconventional oil and gas wells. Although this combined rulemaking ultimately resulted in the disapproval and withdrawal of the Combined VOC Rule, this rulemaking served as the foundation for the emergency-certified final-omitted Conventional VOC Regulation. The Agencies admit that the emergency-certified final-omitted Conventional VOC Regulation is *identical* to the final-omitted Conventional VOC Regulation and is derived from the same RAF form used in the combined rulemaking. *See* POs, ¶¶39, 51, 63. The Agencies justified bypassing CDL procedures of notice and comment as "impracticable, unnecessary and contrary to the public interest" because the "requirements for the conventional oil and natural gas sources covered by this final-omitted rulemaking *are identical to those contained in the combined rulemaking*." PFR, Exhibit No. 5 at 2 (emphasis added); 52 Pa. B. at 7636 (emphasis added). Upon review, Petitioners have alleged sufficient facts to withstand the Agencies' objection to capacity to sue. Thus, we overrule this PO.

## IV. Conclusion

Accordingly, we overrule the Agencies' POs and direct them to file an answer to the PFR.

_____
MICHAEL H. WOJCIK, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Pennsylvania Independent Oil & Gas    :
Association, Pennsylvania Grade    :
Crude Oil Coalition, and Pennsylvania    :
Independent Petroleum Producers    :
Association,    :
   :
                   Petitioners    :
   :
           v.    : No. 574 M.D. 2022
   :
Department of Environmental    :
Protection of the Commonwealth of    :
Pennsylvania and Environmental    :
Quality Board of the Commonwealth    :
of Pennsylvania,    :
   :
              Respondents    :

# **O R D E R**

AND NOW, this 16th day of April, 2024, Respondents' preliminary objections to Petitioners' Petition for Review in the Nature of a Complaint for Declaratory Relief (PFR) are OVERRULED. Respondents are directed to file an answer to the PFR within 30 days of this order.

_____
MICHAEL H. WOJCIK, Judge